# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Board of Financial Institutions, Respondent,

v.

CDM Corporation, Inc. and Guardian Fiduciary Services, LLC, Petitioners.

Appellate Case No. 2025-001557

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Georgetown County
Joe M. Crosby, Master-in-Equity

---

Opinion No. 28342
Heard May 20, 2026 – Filed July 15, 2026

---

## REVERSED

---

Matthew Todd Carroll and Molly McKenna McDermid, both of Womble Bond Dickinson (US) LLP, of Columbia, for Petitioners.

Shawn David Eubanks, Christopher Alton Majure, Sr., and Matthew David Houck, all of the South Carolina Office of the State Treasurer, of Columbia, and Robert Walker Humphrey, II, and Elizabeth Ann Zeck, both of

Willoughby Humphrey & D'Antoni, P.A., of Columbia, all for Respondent.

---

**JUSTICE HILL:** For over fifteen years, Stephen P. Mantell has owned and run the two South Carolina businesses that are the Petitioners here: CDM Corporation, Inc., and Guardian Fiduciary Services, LLC. Both companies help people navigate the probate process by serving as personal representatives of estates, conservators, guardians, and attorneys in fact under powers of attorney. Much of their business comes from referrals from attorneys and appointments by the South Carolina probate courts. In at least four instances, CDM has also served as a trustee of a trust, although both CDM and Guardian have ceased to offer that service.

Several years ago, two people complained to Respondent South Carolina Board of Financial Institutions that Petitioners were corporations conducting a "trust business" without authorization from the Board, as required by S.C. Code Ann. § 34-21-10 (2020). The Board later sued Petitioners, seeking a declaratory judgment that Petitioners were engaged in an unauthorized trust business and an order enjoining them from doing so.

The trial court granted the Board's request for a declaratory judgment that, because Petitioners were corporations, they could not act as a trustee of a trust without Board authorization. The trial court permanently enjoined Petitioners from "acting, or holding [themselves] as available to act as trustee" without approval from the Board pursuant to § 34-21-10. However—and importantly—the trial court denied the Board's request to declare Petitioners' service as a guardian, conservator, and attorney in fact constituted "trust business" activities subject to the Board's oversight and regulation.

The court of appeals reversed. *S.C. Bd. of Fin. Insts. v. CDM Corp.*, Op. No. 2025-UP-169 (S.C. Ct. App. filed May 28, 2025). It concluded that "the term 'trust business' necessarily encompasses fiduciary services provided by not only the trustee of a trust but also a personal representative, conservator, guardian, or agent." We granted certiorari.

## I.

The mainspring of this case is the interpretation of the term "trust business" as used in § 34-21-10, which provides in relevant part:

No corporation, partnership or other person shall conduct a trust business in this State without first making a written application to the State Board of Bank Control and receiving written approval from the Board. Before any such application shall be approved, the Board shall make an investigation to determine whether or not the applicant has complied with all the provisions of law, whether in the judgment of the Board the applicant is qualified to conduct such a business and whether the conduct of such a business would serve the public interest . . . . Provided, further, that nothing contained in this section shall prevent a natural person or a national banking association having its principal place of business in this State from qualifying and acting as trustee, executor, administrator, guardian, committee or in any other fiduciary capacity.

The application fee is $15,000.00, and if approved, the applicant must pay the Board an annual "supervisory fee" of nearly $20,000.00. The term "trust business" is not defined in Title 34, and we have not construed it before. Because the question is one of statutory interpretation, we review it afresh and may decide it without deference to the way the court of appeals or the circuit court answered it. *Davis v. S.C. Dep't of Corrs.*, 444 S.C. 138, 149, 906 S.E.2d 569, 575 (2024).

Petitioners concede CDM's past service as trustee for a trust amounted to conducting a "trust business" within the meaning of the statute. However, CDM no longer acts as a trustee, and both Petitioners have ceased marketing those services. But that is not the end of the matter. The Board insists Petitioners are carrying on a "trust business" whenever they serve as a guardian, conservator, personal representative, attorney in fact, or in any other fiduciary role.

The court of appeals agreed with the Board that "trust business" covers conduct beyond acting as a trustee and extends to other fiduciary roles. It was persuaded in part by the last sentence of § 34-21-10, which states that "nothing contained in this section shall prevent a natural person or a national banking association having its principal place of business in this State from qualifying and acting as trustee, executor, administrator, guardian, committee or in any other fiduciary capacity." The court of appeals believed this proved that only two bodies—natural persons and national banks—can act as a trustee or a fiduciary such as an executor (now known

as a personal representative), trustee, guardian, or committee (now known as a conservator) without Board approval.

Although not defined in the statute, the term "trust business" is not ambiguous. The meaning of a text depends upon context, and background can shade or spotlight meaning. Context and location reveal much about what the term "trust business" means. We will consider relevant terms and definitions in the Banking Code and the Probate and Trust Codes that bear on the meaning of "trust business." We will then compare those terms and definitions to what Petitioners are doing and determine if the legislature intended for Petitioners' activities to be considered a "trust business." *See S.C. Energy Users Comm. v. S.C. Pub. Serv. Comm'n*, 388 S.C. 486, 492, 697 S.E.2d 587, 590 (2010) ("When faced with an undefined statutory term, the term must be interpreted in accordance with its usual and customary meaning. Courts should not merely consider the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the purpose of the whole statute and the policy of the law." (internal citation omitted)).

### A. "Trust Business" and the Banking Code

We start, though, by recognizing the limited scope of authority the legislature has granted the Board. The Board "may supervise all banks and building and loan associations and provide regulations and instructions for the direction, control and protection of all such institutions . . . ." S.C. Code Ann. § 34-1-60 (2020). A bank is defined as any institution "doing any kind of banking business whose deposits are eligible for insurance by the Federal Deposit Insurance Corporation . . . ." S.C. Code Ann. § 34-1-10 (2020).

The Board does not argue Petitioners fit the definition of banks or building and loan associations. Nevertheless, it insists that Petitioners are trust businesses subject to Board regulation pursuant to § 34-21-10. To be sure, the reach of Chapter 21—entitled "Banks and Corporations Doing Trust Business"—seems to extend beyond banks. Section 34-21-20 of the South Carolina Code (2020) provides that banks, and other financial institutions, including "trust companies, and fiduciary corporations authorized to conduct a trust business in this State" are subject to Board regulation.

The very next part of the Banking Code, Article 3 of Chapter 21, provides these definitions:

(1) "Trust Institution" means any state bank, any national bank, any building and loan association, savings association, savings and loan association, savings bank, or any trust company authorized to conduct a trust business in this State, or any trust company, authorized to act in a fiduciary capacity in this State, and under the supervision of the Comptroller of the Currency of the United States, or the Federal Reserve System, or the State Board of Bank Control of South Carolina;

(2) The term "fiduciary" means a trust institution undertaking to act alone or jointly with others primarily for the benefit of another in all matters connected with its undertaking and includes trustee, executor, administrator, guardian of estates, committee of estates of persons non compos mentis, and managing agent;

S.C. Code Ann. § 34-21-210(1)–(2) (2020). Working off these definitions, the Board maintains that anyone acting as a guardian, conservator, or personal representative is a fiduciary, and a fiduciary is necessarily a "trust institution." Therefore, according to the Board, all fiduciaries are operating a "trust business" that must be approved and regulated by the Board (unless the fiduciary is a natural person or a national bank).

We cannot agree with this conclusion. The sequence of § 34-21-210(1)'s definition is important. To be a "trust institution," it is not enough to be authorized to act as a fiduciary—the actor must also be (1) a bank, "building and loan association, savings association, savings and loan association, savings bank, or any trust company authorized to conduct a trust business in this State, or any trust company, authorized to act in a fiduciary capacity in this State," and (2) "under the supervision of the of the Comptroller of the Currency of the United States, or the Federal Reserve System, or the State Board of Bank Control of South Carolina." § 34-21-210(1).

It is significant that these definitions appear in Article 3, which sets out expansive rules and regulations for the management and investment of "common trust funds." Article 3 deals with how and when a bank or other financial institution that has been named a fiduciary "under a will or deed" can collectively invest monies in a common trust fund. A common trust fund "means a fund maintained by a trust institution,

exclusively for the collective investment and reinvestment of moneys contributed thereto by the institution in its capacity as a fiduciary or cofiduciary and established, maintained and administered pursuant to the requirements of this article . . . ."  S.C. Code Ann. § 34-21-210(3) (2020).  The next section provides that trust funds may be invested by the trust institution collectively: "In common trust funds maintained by the trust institution or its affiliate exclusively for the collective investment and reinvestment of monies contributed thereto by the trust institution or its affiliate in their capacities as executor, administrator, committee, guardian, or trustee under a will or deed . . . ."  S.C. Code Ann. § 34-21-220(1) (2020).

The use of the word "capacity" in subsections 34-21-210(1) and (3) and "capacities" in subsection 34-21-220(1) is telling.  It tells us these statutes apply when a trust institution is acting in the capacity of a fiduciary, such as a conservator, personal representative, or guardian.  Trust institutions are statutorily authorized to be appointed as fiduciaries.  S.C. Code Ann. § 34-15-10 (2020).  In other words, a trust institution is capable of being a fiduciary in addition to being a trust institution.  By contrast, a personal representative, conservator, or guardian may act in a fiduciary capacity, but it cannot act in the capacity of a trust institution if it is not one.  Being a fiduciary does not a trust company make.

The rules of Title 34 are designed for entities whose business is to administer trust funds, i.e., banks or trust companies.  Companies like Petitioners—who are not financial institutions and are not investing fiduciary monies in a common trust fund—are not engaged in the "trust business" simply by acting as a personal representative or other non-trustee fiduciary.

### B. "Trust Business" and the Probate and Trust Codes

Petitioners' business activities are confined to serving as a conservator, personal representative, guardian, and attorney in fact in the world of probate.  We must keep that setting in mind when deciding if Petitioners are engaging in a "trust business."  The probate court in general has "exclusive original jurisdiction" over estates and express trusts created as part of estate planning, among other things.  S.C. Code Ann. § 62-1-302(a) (2022 & Supp. 2025).  The Probate Code has a good deal to say about trusts.  It tells us what it considers a trust to be (and not be) in its definitions section: "'Trust' includes any express trust, private or charitable, with additions thereto, wherever and however created. . . . '*Trust*' excludes other constructive trusts, and it *excludes* resulting trusts*, conservatorships, personal representatives*, trust accounts

. . . common trust funds . . . ." S.C. Code Ann. § 62-1-201(49) (Supp. 2025) (emphases added).

The Probate Code and the Trust Code tell us that the word "trust" does not include "conservatorships" or "personal representatives." § 62-1-201(49); *see also* S.C. Code Ann. § 62-7-102 (2022) (incorporating same definition). If we were to accept the Board's view, we would be saying that a company engaging in conduct the Probate Code does not by definition consider to be trust activity is nevertheless pursuing a "trust business."

The South Carolina Trust Code is "directed primarily at trusts that arise in an estate planning or other donative context . . . ." Reporter's Comment to § 62-7-102. The Trust Code excludes "common trust funds" from its scope. This is revealing, for it shows us the Trust Code does not displace or interfere with the rules of Article 3 of the Banking Code that govern the administration of common trust funds, which we earlier discussed. This corroborates our interpretation that the definitions of a trust company or trust institution found in Article 3 do not apply to Petitioners' work as a personal representative, conservator, guardian, or attorney in fact. Our interpretation is further confirmed by the Probate Code's exclusion of personal representatives, conservators, and common trust funds from its definition of "trust."

To further close the circle, a bank or trust company acting as a trustee under an express trust would still be a trustee governed by the Trust Code, in addition to being bound by the strictures of the Banking Code. *See* S.C. Code Ann. § 62-7-102 (2022) (stating the scope of Trust Code includes express trusts); S.C. Code Ann. § 62-7-103(19) (2022) (defining "trustee"). The Reporter's Comment to § 62-7-103 advises that "[s]tate banking statutes normally impose additional requirements before a corporation can act as trustee." This brings us back to where we started, § 34-21-10 of the Banking Code, which requires the Board to approve a corporation's entry into the "trust business" (unless the corporation is a national bank having its principal place of business here).

We therefore hold that Petitioners' service as a personal representative, guardian, conservator or attorney in fact does not constitute conducting a "trust business" within the meaning of § 34-21-10.

## II.

The court of appeals observed that the vetting and regulatory supervision the Board

provides should apply to any fiduciary who handles another's money. But we are convinced the Probate Code and the probate courts provide sufficient controls over personal representatives, conservators, guardians, and attorneys in fact. The Probate Code can require such fiduciaries to post surety bonds, provide accountings, and comply with other measures designed to protect the parties and the public. These fiduciaries are also subject to the contempt power of the court and civil and criminal liability for any wrongs they may commit.

One final note. The court of appeals mentioned a nationwide compact the Board had signed and a policy statement the Board had adopted, both of which contain definitions of "trust business." These documents do not have the force of law, as the Board acknowledges, and do not aid us in interpreting § 34-21-10.

Because Petitioners are not engaged in the "trust business" within the meaning of § 34-21-10, the decision of the court of appeals is

**REVERSED**.

**KITTREDGE, C.J., FEW, JAMES and VERDIN, JJ., concur.**